UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHAN DEPREY, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:18-CV-102-MPS |
| | : | |
| v. | : | |
| | : | |
| FEDEX FREIGHT, INC., | : | |
| | : | |
| Defendant. | : | April 8, 2020 |

## SUMMARY JUDGMENT RULING

Plaintiff Jonathan Deprey filed this action against his employer FedEx Freight, Inc.

("FedEx"), alleging that he was subjected to sexual harassment and a hostile work environment

in violation of Title VII, 42 U.S.C. §2000e *et seq.* ("Title VII"), and the Connecticut Fair

Employment Practices Act, Conn. Gen. Stat. § 46a-60 ("CFEPA"). Compl., ECF No. 1. The

Defendant moves for summary judgment on both counts of the complaint. ECF No. 28. For the

reasons set forth below, the motion is denied as to both counts.

## I.     FACTS

The following facts are taken primarily from the parties' Local Rule 56(a) Statements.

*See* Def.'s L.R. 56(a)(1) Stmt. ("Def. Stmt."), ECF No. 30; Pl.'s L.R. 56(a)(2) Stmt. ("Pl.

Stmt."), ECF No. 36-2. The facts are undisputed unless otherwise noted, and I construe all

ambiguities in the record in Deprey's favor.

**A. Harassment**

FedEx hired Plaintiff Jonathan Deprey as a part-time dock worker at its Winsor Locks,

Connecticut location in 2015.[1] Deprey reports that the first incident of sexual harassment

occurred "not long after [he] began his employment." Def. Stmt., ECF No. 30 ¶ 9. According to

Deprey, a fellow dock worker, Danny Mirambeaux, asked him whether he would like to see a

picture of Mirambeaux's watch; Deprey said "Sure." *Id.* Mirambeaux showed Deprey a picture

of his watch on his phone; "[a]lso visible in the picture was a hand holding a penis, bare male

legs and one foot." *Id.* Another male dock worker and a male supervisor were present along with

Mirambeaux, and "all three individuals started laughing." *Id.* Deprey said, "please don't ever

show me that again," but the three "all laughed at his response." *Id.* Mirambeaux later denied

ever showing "inappropriate pictures to anyone at work on his cell phone." *Id.* ¶ 22.

Following this first incident, Deprey alleges that Mirambeaux and the other two

individuals also stated that they "wanted to fuck [Deprey] and wanted to suck [Deprey's] dick."

*Id.* ¶ 10. Deprey testified at his deposition that these three coworkers made comments like this

frequently:

> They said this to anyone they didn't like or they thought they would get a rise out of it.
> This happened all the time. Drivers did this. Supervisors watched this. All they did was
> make fun of people they did not like or did not think belonged there and called them
> anything they could and everything.

Deprey Dep., ECF No. 36-4 at 16; Def. Stmt., ECF No. 30 ¶ 11. For "[o]ne week," Deprey

would "do a light chuckle because [he] felt awkward . . . like [he] had to play along as if it's not

---

[1] Although the parties have not addressed the length of the plaintiff's work tenure in their Local
Rule 56 statements, the defendant states in its brief that the plaintiff was hired on September 2,
2015, and discharged on October 28, 2016, for attendance issues. ECF No. 29 at 1. The
plaintiff's discharge is not challenged in this lawsuit, and his brief does not address the length of
his tenure at FedEx.

bothering [him] . . . . So, [he] tried to be just like 'okay' and just walk away, but it kept going and going and going." Deprey Dep., ECF No. 36-4 at 17. Deprey reported these incidents to his immediate supervisor, Mike Dodson. Deprey Dep., ECF No. 36-4 at 14. Dodson "laughed" and told him "it was . . . what happened normally on the dock." *Id.* at 15.

Later in his employment, another male coworker, Jheremi Rosado, showed Deprey a picture of himself shirtless. Def. Stmt., ECF No. 30 ¶ 12. Rosado also said, "let me suck your cock." *Id.* Deprey asked him to stop. Then another male dock worker, Jamie Colon, repeatedly asked, "who has a small dick?" *Id.* ¶ 13. Colon is the "only openly gay worker on the dock." *Id.* Both Rosado and Mirambeaux would repeatedly make comments such as, "let me see your cock," "let me kiss you," and "no, nigga, suck my cock." *Id.* ¶ 14. Deprey testified that Rosado and Mirambeaux would make comments like this "all the time." Deprey Dep., ECF No. 30-1 at 7. Colon at one point said, "who wants your cock sucked." *Id.*; Compl., ECF No. 1 ¶ 20. He "was saying it to everyone," "in front of the entire dock," while "staring right at [Deprey]." Deprey Dep., ECF No. 30-1 at 7. When asked why these coworkers said these things, Deprey testified:

> They just did this. They did it out of randomness. Maybe it was fun. Maybe it was banter. Maybe it was something to fill their least miserable day. They enjoyed this. This was a sick game, and I was a victim of it.

*Id.* Another coworker, Nate Donohue, called Deprey "dock bitch" a few times. Def. Stmt., ECF No. 30 ¶ 16. Supervisors, including a female supervisor named Amanda and a male supervisor named Joe, were present when these comments were made, "joined in on all this," and "joked around with them all about it." *Id.* ¶ 15; Deprey Dep., ECF No. 30-1 at 7.

### B. Investigation

In March 2016, Deprey contacted Ashley McCutcheon, in FedEx's HR department, and "left two voicemail messages stating that he was being harassed." Def. Stmt., ECF No. 30 ¶ 18.

An Employee Relations Advisor, Terry Shear, called Deprey back and left him a voicemail. *Id.* Shear's "jobs responsibilities include investigating hostile work environment and sexual harassment claims." *Id.* ¶ 17. Shear and Deprey arranged to meet in person on March 10, 2016. *Id.* ¶ 18. At the meeting, Deprey recounted incidents of harassment he had experienced. Deprey referred to handwritten notes during the meeting, but he declined to share those notes with Shear. *Id.* ¶ 19. After the meeting, Deprey provided Shear with a three-page statement detailing his allegations of harassment. *Id.* ¶ 20.

Shear initiated an investigation as a result of Deprey's complaints. *Id.* ¶ 20. He interviewed and took statements from FedEx employees that Deprey identified as witnesses to the conduct. *Id.* Mirambeaux denied showing "any inappropriate pictures to anyone at work on his cell phone." *Id.* ¶ 22. Shear testified that he did not ask Mirambeaux "to produce his cellphone" during the investigation. Shear Dep., ECF No. 36-5 at 18.

Another dock worker, Vincent Harrison, told Shear that "profanity and sexual-related language took place on the dock," but he "never stated that he witnessed it directed towards [Deprey]." *Id.* ¶ 21. Donahue "admitted to using the term 'dock bitch' at work," but stated that he stopped when Deprey asked him to. *Id.* ¶ 23. Colon also "admitted to using profanity in the workplace." *Id.* ¶ 24. Shear spoke with "Service Center Manager Jeff Bausch about [Deprey's] allegations," but Bausch "denied being aware of any conduct that could have constituted sexual harassment involving [Deprey]." *Id.* ¶ 25. Deprey testified that Bausch was "on that dock laughing with all these jokes." Deprey Dep., ECF No. 36-4 at 16.

"At the conclusion of his investigation, Shear was unable to confirm [Deprey's] sexual harassment and hostile work environment allegations," and he submitted his findings to his

supervisor, Brian Jenkins. Def. Stmt., ECF No. 30 ¶ 26. Shear did confirm Deprey's allegation that an employee shut off the propane valve on the forklift Deprey was using. *Id.* ¶ 27.

Shear testified that he had investigated "at least one other claim similar to [Deprey's]," in which a dock worker at a different FedEx facility said, "someone want to come over and suck my cock?" at work over a loudspeaker. *Id.* ¶ 28. That dock worker admitted to making the statement and was "terminated as a result of his actions." *Id.*

### C. FedEx Policies and Training

At all times relevant to Deprey's claims, FedEx "maintained an electronic employee handbook"; Deprey signed a written acknowledgement of this handbook. *Id.* ¶ 3. FedEx also has an "Equal Employment Opportunity/Non-Discrimination Policy and Procedure for Complaints" that prohibits harassment and "provides multiple avenues for employees to complain." *Id.* ¶ 4. FedEx had "procedures in place for employees to report complaints of sexual harassment . . . to their managers, employee relations, or through an Alert Line." *Id.* ¶ 6. FedEx employees at the Windsor Locks facility "must complete annual computer-based sexual harassment training." *Id.* ¶¶ 5, 7. There are also "notices posted around the facility notifying employees of certain employee rights under the law, including rights related to sexual harassment in the workplace." *Id.* ¶ 6.

## II. LEGAL STANDARD

The court must grant a motion for summary judgment if the moving party shows "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* In reviewing the record, the court "must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013).

## III.   DISCUSSION

### A.  Title VII Claim

Count One of Deprey's complaint alleges sexual harassment in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, which prohibits discrimination in the "terms, conditions, or privileges of employment, because of . . . sex." §2000e-2. This language "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). An employer thus violates Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks and citation omitted). To establish a claim of hostile work environment, a plaintiff must show that: (1) he was subjected to harassment because of his membership in a protected class; (2) the harassment was so severe or pervasive as to alter the conditions of his employment; and (3) there

is a specific basis for imputing the harassment to the defendant. *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 388 (S.D.N.Y. 2002); *Davis v. Vermont, Dep't of Corr.*, 868 F. Supp. 2d 313, 323 (D. Vt. 2012); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). For the reasons discussed below, I find that Deprey has raised a genuine dispute of material fact as to each of these elements.

### 1. *Harassment Because of Sex*

"Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women," and "sex discrimination consisting of same-sex sexual harassment is actionable under Title VII." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 82 (1998). In cases involving same-sex sexual harassment, the plaintiff still "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'" *Id.* at 81 (quoting 42 U.S.C. § 2000e-2); *Barrows v. Seneca Foods Corp.*, 512 F. App'x 115, 117 (2d Cir. 2013) (noting that "[t]he critical issue for same-sex harassment claims is whether members of one sex are exposed to disadvantageous terms or conditions of employment [*e.g.*, a hostile work environment] to which members of the other sex are not." (alterations in original) (internal quotation marks omitted)). In *Oncale*, the Supreme Court explained that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity," making it "reasonable to assume those proposals would not have been made to someone of the same sex." 523 U.S. at 80. "The same chain of inference would be available to a plaintiff alleging same-sex harassment," the Court reasoned, in certain situations, such as: (1) where "there were credible evidence that the harasser was homosexual," (2) where the victim "is harassed in such sex-specific and

derogatory terms by [a harasser of the same sex] as to make it clear that the harasser is motivated

by general hostility to the presence of [the victim's sex] in the workplace," or (3) where the

plaintiff offers "direct comparative evidence about how the alleged harasser treated members of

both sexes in a mixed-sex workplace." *Id.* at 80–81.

While the Supreme Court recognized these three "evidentiary route[s]" explicitly, the

language of the *Oncale* decision does not suggest that they are the exclusive routes to proving

that same-sex sexual harassment is discrimination because of sex. *Id.* at 81. The Court described

the routes as "example[s]," but noted, "[w]hatever evidentiary route the plaintiff chooses to

follow, he or she must always prove that the conduct at issue . . . actually constituted

discrimina[tion] . . . because of . . . sex." *Id.* (alterations in original). When interpreting *Oncale*,

courts in this Circuit have held that the list is nonexclusive. *See Springs v. City of New York*, No.

17-CV-451, 2019 WL 1429567, at *12 (S.D.N.Y. Mar. 29, 2019) (The three examples in *Oncale*

are "not an exhaustive list"); *Perry v. Slensby*, No. 16-CV-08947, 2018 WL 1136922, at *8

(S.D.N.Y. Feb. 28, 2018) (*Oncale* listed "three recognized but nonexclusive evidentiary

routes."); *Davis v. Vermont, Dep't of Corr.*, 868 F. Supp. 2d 313, 323 (D. Vt. 2012) (The three

routes in *Oncale* "are nonexclusive evidentiary routes that courts have recognized."). In addition,

as in any Title VII suit, a plaintiff in a same-sex sexual harassment suit "can also sustain an

allegation of sex discrimination in violation of Title VII based on gender stereotyping." *Davis*,

868 F. Supp. 2d at 323 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)); *see* 490 U.S.

at 251 ("[W]e are beyond the day when an employer could evaluate employees by assuming or

insisting that they matched the stereotype associated with their group, for in forbidding

employers to discriminate against individuals because of their sex, Congress intended to strike at

the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." (internal quotation marks and alteration omitted)).

"[T]he question of whether considerations of the plaintiff's sex *caused* the conduct at issue often requires an assessment of individuals' motivations and state of mind. Issues of causation, intent, and motivation are questions of fact. Although summary judgment in discrimination cases is fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case, when, as is often the case in sexual harassment claims, fact questions such as state of mind or intent are at issue, summary judgment should be used sparingly." *Redd v. New York Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) (emphasis in original) (internal citations and quotation marks omitted).

Here, construing all the facts in Deprey's favor, I conclude that a reasonable jury could find that the harassment he experienced was "because of" his sex. First, Deprey avers that Colon was "openly gay" and repeatedly asked him, "who has a small dick?" Def. Stmt., ECF No. 30 ¶ 13. Colon also asked, "who wants your cock sucked," while "staring right at [Deprey]." Deprey Dep., ECF No. 30-1 at 7. As the *Oncale* Court explicitly recognized in its first "evidentiary route," a juror could reasonably infer from these circumstances that Colon's comments were motivated by sexual desire, and that they would not have been made if Deprey were female.

As for Rosado and Mirambeaux, Deprey testified that he did not know whether either of them was gay. Deprey Dep., ECF No. 30-1 at 6. But even without any evidence that Rosado and Mirambeaux are gay, a jury could reasonably infer from their conduct that they were motivated by Deprey's sex. In *Redd v. New York Div. of Parole*, the Second Circuit explained that factfinders are "entitled to draw inferences as to intent and motivation from conduct as well as from words":

> If the claim were that a supervisor—of either gender—stated to a female employee "I want to feel your breasts," or stated to a male employee "I want to feel your penis," a jury could easily infer that the stated desire was because of the employee's sex.

678 F.3d 166, 181 (2d Cir. 2012). And even in cases where a harasser "testified he is heterosexual and argues he cannot have been motivated by sexual desire even if [the male] plaintiff's allegations are true," courts have found a triable issue of fact when the harasser "repeatedly behaved towards plaintiff in ways a reasonable person could perceive as sexual, even after plaintiff asked him to stop." *Rodriguez v. City of Danbury*, No. 3:15-CV-01269, 2019 WL 4806032, at *17 (D. Conn. Sept. 30, 2019) (analyzing a §1983 sexual harassment claim based on *Redd* and other Title VII cases); *Hayut v. State Univ. of New York*, 352 F.3d 733, 744 (2d Cir. 2003) ("Section 1983 sexual harassment claims that are based on a 'hostile environment' theory . . . are governed by traditional Title VII 'hostile environment' jurisprudence.").

Rosado's and Mirambeaux's comments were just as direct as the *Redd* court imagined: they said they "wanted to fuck [Deprey] and wanted to suck [Deprey's] dick," and said "let me suck your cock," "let me see your cock," "let me kiss you," and "no, nigga, suck my cock." Def. Stmt., ECF No. 30 ¶ 10, 12, 14. While it is of course possible that these comments were made in jest and were not literal sexual invitations, a reasonable juror could also infer that they were motivated by sexual desire. Deprey himself "start[ed] to think [he] must be attractive to the same sex, since [he] ha[d] all these guys asking [him] to do things for them." Deprey Dep., ECF No. 36-4 at 20. Since Deprey inferred that his coworkers' conduct constituted sexual advances, "[w]e see no principled reason why a jury . . . would not be permitted to draw the same inference." *Redd*, 678 F.3d at 179. There is a genuine dispute of material fact, therefore, as to whether Deprey's coworkers' comments were motivated by sexual desire and thus were "because of" Deprey's sex.

Even if the comments were not motivated by desire, Deprey has also adduced evidence to suggest that his coworkers' harassment was otherwise based on sex. In *Barrows v. Seneca Foods Corp.*, the Second Circuit found that "a jury could reasonably find that the conduct was gender-based" where the evidence "demonstrate[d] that men were the primary targets of [the harasser's] conduct." 512 F. App'x at 118. The Court also noted that "a reasonable jury could also consider the fact that some of [the harasser's] vulgar comments were sex-specific" and such "additional considerations . . . could contribute to a reasonable jury's ultimate conclusion that the alleged harassment was motivated by the victim's sex." *Id.* In *Springs v. City of New York*, the defendant "placed his genitals on Plaintiff's face" and later told him "I know you like my balls in your mouth." 2019 WL 1429567, at *1. The court made no mention of whether the alleged harasser was actually gay or motivated by sexual desire, but held that "[t]he very nature of the act in question, as well as the sexually-explicit comments, suggest that Plaintiff would not have been subject to the same treatment if he were a woman." *Id.* at *12. In addition, discrimination—including harassment—based on "non-conformity with gender norms" is cognizable under Title VII. *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 112 (2d Cir. 2018) (citing *Price Waterhouse*, 490 U.S. at 250–51). So a male plaintiff "can ground a claim on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity." *Davis*, 868 F. Supp. 2d at 324 (internal quotation marks omitted; finding that mocking the plaintiff for an injury to his groin and testicles "supports the reasonable inference that the abuse was motivated by a perception that [plaintiff] was not conforming to gender stereotypes . . . of how a man should act").

Here, the record suggests that Mirambeaux, Rosado, and Colon targeted men for sexual comments and conduct: Deprey testified that they "took pictures of an older gentleman's dick

while he was taking a piss and showed it to the entire dock." Deprey Dep., ECF No. 36-4 at 16. The nature of the harassment of Deprey was also male-specific, since the majority of their comments involved the words "dick" or "cock" and since they showed Deprey pictures of naked males. Another coworker called Deprey a "fag[g]ot," which could raise the inference that Deprey was targeted because he did not conform to his coworkers' stereotypes of heterosexual masculinity. Deprey Dep., ECF No. 36-4 at 15. The nature of this harassment, taken together, suggests that there is at least a triable issue of fact as to the harassers' motivations and as to whether Deprey would have been subject to the same treatment if he were a woman.

FedEx argues that Deprey has not shown that the harassment was motivated by gender because some of the harassment was directed at "everyone" and "anybody they didn't like," ECF No. 29 at 12, and Deprey has thus failed to show that he was "subject to disadvantageous terms or conditions of employment to which members of the other sex were not exposed," ECF No. 39 at 6. The record mentions only one female employee at Deprey's FedEx location: a supervisor named Amanda who "joined in" on many of the inappropriate comments. Def. Stmt., ECF No. 30 ¶ 15. So while there is no direct evidence that the harassers treated women more favorably than they treated men, there is also no evidence that they treated female employees the same way they treated Deprey—which is enough to warrant an inference of sex-based harassment. *Barrows*, 512 Fed. Appx. at 117–18 & n.4 (jury could find conduct gender-based where there was evidence that male harasser directed vulgar comments toward male coworkers and struck their genitals, but that "female employees . . . were apparently not subjected to the same treatment," because plaintiff had testified only that the harasser was using vulgar language "in front of females", but not "toward the female workers"). Here, the record suggests that Deprey's harassers' targets were exclusively men, as discussed above. Moreover, "the ultimate issue [in a

Title VII claim] is the reasons for the individual plaintiff's treatment, not the relative treatment of different groups within the workplace. . . . [I]t is not strictly necessary for a plaintiff to identify an employee who was treated more favorably than the plaintiff and who was similarly situated to the plaintiff, except for being of the opposite sex." *Brown v. Henderson*, 257 F.3d 246, 252–53 (2d Cir. 2001).

Therefore, when the evidence in this case is construed in Deprey's favor, there is a genuine dispute of material fact as to whether the harassment he experienced was motivated by his sex.

### 2. *Severe and Pervasive*

To be actionable under Title VII, sexual harassment also must be "sufficiently severe or pervasive . . . to alter the conditions of [the victim's] employment and create an abusive working environment." *Redd*, 678 F.3d at 175. This standard "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015). The incidents must be "sufficiently continuous and concerted in order to be deemed pervasive." *Id.* And courts must "consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted).

Here, Deprey has adduced sufficient evidence for a reasonable jury to find that his coworkers' sexual conduct and comments were severe and pervasive, both objectively and subjectively. He testified that a coworker showed him a photo of the coworker's penis. He also

13

testified that the inappropriate sexual comments—such as saying they "wanted to fuck [him] and wanted to suck [his] dick," ECF No. 30 ¶ 10—happened "every day" and was "an ongoing thing" that "just kept going." Deprey Dep., ECF No. 36-4 at 15. He avers that Colon repeatedly asked, "who has a small dick?", ECF No. 30 ¶ 13, and that Rosado said "Let me suck your cock" every day, ECF No. 36-4 at 19. The sexual comments were "said every single day repeatedly. This didn't stop. Every other word out of these people's mouth was either a swear or who wants what sucked or fucked." Deprey Dep., ECF No. 36-4 at 21. The comments were far more pervasive than an occasional profanity or off-color joke. The comments were also severe, since they were very explicit and directed at Deprey, even though he had asked them to stop. *See* Deprey Dep., ECF No. 30-1 at 7 (testifying that Colon asked "who wants your cock sucked" in front of everyone while "staring right at [Deprey]"); *id.* at 6 ("Q. And you asked him [Colon] to stop every time? A. Yes."). Deprey testified that he subjectively perceived the environment as abusive: he felt "disgusted," ECF No. 36-4 at 12, like there was "[g]roup hate" against him, since people called him "snitch, fag[g]ot," *id.* at 34, and he complained to his supervisors and eventually to HR, *id.* at 24. He also testified that he was subject to physical threats after he complained to HR, such as when a coworker shut off the propane tank on his forklift and when Mirambeaux and Colon drove their forklifts directly at him. *Id.* at 28 ("Every time I would go to the bathroom or leave my lift, someone would shut off my propane tank . . . . If that tank is leaking or off, it will slow down and you have probably 30 or 40 dock workers behind you who will hit you, quite possibly."); *id.* at 31–32 ("They both tried to hit me with two forklifts going about 25 miles per hour."); *id.* at 32 ("This is all after I had already said things to Terry [Shear].").

A reasonable person would find this conduct, taken as a whole, to be hostile and abusive, and Deprey himself found it so. Courts have denied summary judgment based on less pervasive and less severe conduct. *E.g.*, *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (finding that "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm" were "sufficiently continuous and concerted to have altered the conditions of [plaintiff's] work environment."). In *Redd*, the court noted that "uninvited sexual solicitations; intimidating words or acts; and obscene language or gestures" constituted sexual harassment, while "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" did not. 678 F.3d at 177. The alleged conduct here was far more than occasional, and was far more than "tinged" with sexual innuendo; rather, Deprey testifies to explicit sexual solicitations happening almost every day and to intimidating physical acts after he complained to HR. Because Deprey has adduced evidence suggesting that the sexual harassment was frequent, severe, made him feel disgusted and hated, and even resulted in his harassers' physically threatening him with forklifts, he has raised a triable issue of fact as to whether the conduct is sufficiently severe or pervasive to be cognizable under Title VII.

### 3. *Imputing Liability to FedEx*

Finally, FedEx argues that any harassment by Deprey's coworkers cannot be imputed to FedEx because its Employee Relations team investigated Deprey's complaints and because FedEx offers annual sexual harassment training. ECF No. 29 at 13. If the plaintiff is harassed by a supervisor, "the objectionable conduct is automatically imputed to the employer unless the employer can prove by a preponderance of the evidence . . . (1) that the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer or to avoid harm otherwise." *Springs*, 2019 WL

1429567, at *12 (internal quotation marks omitted) (citing *Gorzynski v. JetBlue Airways Corp.*,

596 F.3d 93, 103 (2d Cir. 2010) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

If the hostile work environment is created by non-supervisory coworkers, the employer is liable

only if it "knew or reasonably should have known about harassment by non-supervisory co-

workers, yet failed to take appropriate remedial action." *Turley v. ISG Lackawanna, Inc.*, 774

F.3d 140, 153 (2d Cir. 2014).

Deprey testified that some of the supervisors joined in on the inappropriate comments.

Deprey Dep., ECF No. 36-4 at 23 (testifying that Amanda "joined in on all this," and Joe "joked

around with them all about it"). He also suggested that Colon, who harassed him directly, was a

supervisor, although it is not clear whether Colon was a supervisor at the time of the harassment.

*See id.* at 14 (describing Mirambeaux's friends as "both Spanish. One is now a driver and the

other is a supervisor. [The o]ne that is the supervisor is heavier with a possible goatee still."); *id.*

at 20 (describing Colon as "Spanish, heavier"); ECF No. 30-1 at 7 (clarifying that "Jamie

[Colon]" is the "gay individual" earlier described as "heavier"). In light of these allegations,

FedEx failed to rebut the presumption of employer liability because it did not argue or offer any

evidence that Deprey "unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer or to avoid harm otherwise," as required for an

affirmative *Faragher* defense. 524 U.S. at 807.

Even when only the alleged harassment by coworkers is considered, Deprey has raised a

genuine dispute of fact as to whether FedEx "knew or reasonably should have known about

harassment by non-supervisory co-workers [such as Mirambeaux and Rosado], yet failed to take

appropriate remedial action." *Turley*, 774 F.3d at 153. Deprey testified that several supervisors

knew about the harassment because they witnessed it directly. *See* ECF No. 36-4 at 10 (A

supervisor witnessed Mirambeaux's showing Deprey the picture of a penis.); *id.* at 16

("Supervisors watched" the inappropriate conduct.); *id.* at 23 (Supervisors Amanda and Joe

joined in on the inappropriate jokes). Deprey also complained to multiple supervisors about the

harassment before he complained to HR, but none of those supervisors took any action in

response. ECF No. 36-4 at 14–15 (Deprey reported the harassment to his immediate supervisor,

Mike Dodson, who "laughed" and "told [him] it was, well, what happened normally on the

dock."); *id.* at 23–24 (Deprey complained to supervisor Joe, who "walked away like he didn't

care."). There is, at the least, a genuine dispute regarding supervisors' knowledge of the

harassing conduct.

The evidence also creates a genuine dispute of material fact as to whether FedEx took

"appropriate remedial action" in response to Deprey's complaints. *See Distasio v. Perkin Elmer

Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) ("An employer that has knowledge of a hostile work

environment has a duty to take reasonable steps to remedy it."). As stated above, some

supervisors witnessed harassment but failed to intervene, and some supervisors laughed at and

ignored Deprey's complaints. Terry Shear, FedEx's Employee Relations Advisor, did investigate

Deprey's allegations, but "was unable to confirm [Deprey's] sexual harassment and hostile work

environment allegations." Def. Stmt., ECF No. 30 ¶ 26. There is at least genuine dispute of

material fact about whether Shear's investigation—which did not include even asking

Mirambeaux to show his cell phone, ECF No. 36-5 at 18—was reasonably adequate, and Shear

did not take any disciplinary steps against the alleged harassers or any other remedial steps to

protect Deprey from further harrassment. ECF No. 30 ¶ 26. A reasonable jury construing the

evidence in the record in Deprey's favor could find that FedEx's response was inadequate. *See*

*Distasio*, 157 F.3d at 65 ("The reasonableness of the company's response must be assessed by the jury based on the totality of the circumstances.").

***

Deprey has adduced sufficient evidence to create genuine disputes of material as to whether he was harassed because of his sex, whether the harassment was so severe or pervasive as to alter the conditions of his employment, and whether the harassment can be imputed to FedEx. Therefore, I deny summary judgment on Deprey's Title VII claim.

## B. CFEPA Claim

Count Two of Deprey's complaint alleges sexual harassment in violation of CFEPA, Conn. Gen. Stat. § 46a-60. The statute provides:

> It shall be a discriminatory practice in violation of this section . . . [f]or an employer . . . to harass any employee . . . on the basis of sex or gender identity or expression. . . .  As used in this subdivision, 'sexual harassment' means any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when . . . such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Conn. Gen. Stat. § 46a-60(b)(8). Connecticut courts "look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." *Feliciano v. Autozone, Inc.*, 316 Conn. 65, 73 (2015). FedEx analyzes Deprey's CFEPA and Title VII claims together and has not made any argument that Deprey's CFEPA claim should fail even if his Title VII claims does not. Therefore, for the same reasons articulated above with respect to Deprey's Title VII claim, I deny summary judgment as to his CFEPA claim.

## IV.    CONCLUSION

For all the foregoing reasons, FedEx's motion for summary judgment, ECF No. 28, is

DENIED. The parties shall file a joint trial memorandum **within 60 days** of this Order, contrary

to the schedule previously ordered by the Court. *See* ECF No. 25.[2]

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:  April 8, 2020
        Hartford, Connecticut

---

[2] In reaching this decision, I reviewed the briefs and submissions of the parties, as well as a brief *amicus curiae* from the Connecticut Commission on Human Rights and Opportunities, ECF No. 35.